# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### ASHEVILLE DIVISION
### 1:14cv122

| | | |
|---|---|---|
| MICHAEL A. KITCHEN & LISA CHARLENE HONEYCUTT, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | **MEMORANDUM AND RECOMMENDATION** |
| PATRICK BARTON, et al., | ) ) | |
| Defendants. | ) | |

Pending before the Court is Defendants' Motion to Dismiss [# 16]. Plaintiffs brought this action against Defendants Patrick Barton, Shawn Miller, Jason Page, Chad Famer, Aaron Whimire, Aaron Thompson, Greg Holden, Barry Galloway, Harry Holden, Brian Sizemore and Brad Woodson, (the "Individual Defendants"), Chief of Police Phil Harris, Sheriff David Mahoney, as well as the City of Brevard and Transylvania County, North Carolina asserting federal claims pursuant to 42 U.S.C. § 1983. The Second Amended Complaint also asserts various state law claims. Defendants move to dismiss a number of the claims asserted in the Second Amended Complaint. The Court **RECOMMENDS** that the District Court **GRANT in part** and **DENY in part** the motion [# 16].

# I.     Background

Plaintiffs Michael A. Kitchen and Lisa Charlene Honeycutt are residents of Transylvania County, North Carolina. (Pls.' Sec. Am. Compl. ¶¶ 3-4.)  From 2009 until May 14, 2011, Plaintiffs Kitchen and Honeycutt resided together in an apartment complex in Brevard, North Carolina.   (Id. ¶ 13.)   In February of 2009, a jury in the United States District Court for the Western District of North Carolina found in favor of Plaintiff Kitchen in an employment discrimination case.  (Id. ¶ 18.)   The jury awarded Plaintiff Kitchen compensatory and punitive damages. (Id.)  After this favorable jury verdict, Plaintiffs contend that police officers with the Brevard Police Department and deputies with the Transylvania County Sherriff's Department began a coordinated campaign of intimidation and oppression against Plaintiffs. (Id. ¶ 19.)

As part of this campaign of intimidation and oppression, Plaintiffs point to a number of events that occurred between 2009 and early 2011.  (Id. ¶ 20.)   Prior to early 2011, Defendant Patrick Barton, who was acting under color of state law in his capacity as a police officer with the City of Brevard (id. ¶ 5), held a cigarette lighter to Plaintiff Kitchen's beard and threatened to burn off his beard (id. ¶ 21), made derogatory, racial slurs and threats directed at Plaintiff Kitchen (id. ¶ 22), and held a pistol to Plaintiff Kitchen's head and threatened to kill him (id. ¶ 23).

Defendant Barton and Defendant Aaron Thompson, who was also acting under color of state law in his capacity as a police officer with the City of Brevard (id. ¶ 5), told Plaintiff Kitchen that he was under surveillance by the Department of Homeland Security (id. ¶ 24), and threatened Plaintiff (id. ¶ 25). On one or more occasions, Defendants Chad Farmer, Jason Page, Shawn Miller, Aaron Whitmire, Greg Holden, and Brian Sizemore, who were all acting under color of state law in either their capacity as police officers with the City of Brevard or as deputy sheriffs employed by Transylvania County (id. ¶¶ 5, 8), brandished their weapons outside Plaintiffs' apartment for the sole purpose of terrifying Plaintiffs (id. ¶ 26).

On April 19, 2011, Defendant Barton and other Defendants struck Plaintiffs' front door with a battering instrument. (Id. ¶ 30.) When Plaintiff Kitchen opened the door, Defendant Barton ordered Plaintiff Kitchen outside at gunpoint and pointed his gun directly at Plaintiff Kitchen's face. (Id. ¶ 31.) Defendant Barton then choked Plaintiff Kitchen until he passed out. (Id. ¶ 32.) Plaintiff Kitchen was handcuffed, arrested, and then taken by squad car to the Transylvania County Magistrate Court. (Id. ¶ 33, 35.) Defendants Greg Holden, Harry Holden, Brad Woodson, and Sizemore were all present at the time, and each made racist remarks towards Plaintiff Kitchen. (Id. ¶ 34.) The Magistrate, however, declined to charge Plaintiff Kitchen with a criminal offense and released Plaintiff Kitchen. (Id. ¶¶ 36-

7.)

On May 14, 2011, Defendants Miller, Farmer, Page, Whitmire, Greg Holden, and Barry Gallaway forced their way into Plaintiffs' apartment. (Id. ¶ 44.) Defendant Miller than grabbed Plaintiff Kitchen and placed him in a chokehold while ordering him to the floor. (Id. ¶ 47.) Defendant Farmer or Defendant Page then tackled Plaintiff Kitchen by the legs while Defendant Miller forced his head to the floor. (Id. ¶ 48.) Defendant Miller pinned Plaintiff Kitchen's neck to the floor with his foot and began inflicting pain on Plaintiff Kitchen by forcing his left arm away from his torso before he placed Plaintiff Kitchen in handcuffs. (Id. ¶¶ 49-53.) Meanwhile, Defendant Farmer, Defendant Whitmire, or Defendant Page forced Plaintiff Honeycutt to the ground, placed her in handcuffs, and intentionally inflicted pain on her. (Id. ¶¶ 54-58, 60.) Defendant Whitmore eventually removed Plaintiff Honeycutt from the apartment, injuring her knees. (Id. ¶ 66.)

After someone removed the handcuffs from Plaintiff Kitchen's wrist, one of the Defendants shot Plaintiff Kitchen with a Taser. (Id. ¶¶ 59, 61) Several of the Defendants then began to pepper spray Plaintiff Kitchen and continued shooting him with a Taser. (Id. ¶¶ 62-5, 66.) At some point, Plaintiff Kitchen's clothes caught on fire. (Id. ¶ 72.) A struggle between Defendant Page or Defendant Farmer and another resident of the apartment ensued, which resulted in lighter

fluid and kerosene spilling on the floor.  (Id.  ¶¶ 75-6.)  The fire then began to spread throughout the apartment. (Id. ¶ 78.)   Once the fire started to spread, Defendants ran out of the apartment, leaving Plaintiff Kitchen in the burning apartment.  (Id. ¶¶ 80-1.)

Plaintiff Kitchen eventually ended up outside the apartment, where he was tackled, restrained, shot with a Taser again, and thrown in the back of a patrol car. (Id. ¶¶ 83-4, 86.)  An unnamed police officer or sheriff's deputy then transported Plaintiff Kitchen to the Transylvania County Detention Center, where he remained until he was transported to the hospital for a decontamination several hours later. (Id. ¶ 97.)  Defendants, however, prevented Plaintiff Kitchen from receiving medical care for his injuries that night by falsely informing the hospital that he had refused medical treatment.  (Id. ¶ 98.)

The next day, Defendant Barton arrested Plaintiffs Kitchen and Honeycutt, despite knowing that Kitchen was not in fact guilty of the charges.   (Id. ¶¶ 101, 104.)  Magistrate Rickey Lambert charged Plaintiff Kitchen with four counts of resisting a public officer on May 15, 2011. (Id. ¶ 102.)  Magistrate Lambert charged Plaintiff Honeycut with one count of resisting a public officer, but the charge was subsequently dismissed. (Id. ¶ 105.)

On May 15, 2011, Defendant Thompson also submitted an application for a

search warrant for Plaintiff Kitchen's residence. (Id. ¶ 103.) Plaintiffs allege that Defendant Thompson knew the application was based on false information. (Id.) After the first search of the apartment failed to reveal any evidence against Plaintiffs (id. ¶ 107), Defendant Barton applied for a second search warrant on May 19, 2011 (id).

Plaintiffs then brought this action on May 14, 2014, asserting a number of claims against Defendants. Count One asserts a Section 1983 claim against all of the Defendants for deprivation of Plaintiffs' rights as secured by the Fourth and Fourteenth Amendment to the United States Constitution. (Id. ¶¶ 122-26.) Count Two asserts a Section 1983 claim against Defendant Harris in his capacity as Chief of Police for the Brevard Police Department and Defendant Mahoney in his capacity as Sheriff of Transylvania County for failure to adequately train and supervise their employees. (Id. ¶¶ 127-34.) Count Three asserts a Section 1983 claim against Defendants for use of excessive force. (Id. ¶¶ 135-8.) Count Four asserts a Section 1983 claim against Defendants for false arrest. (Id. ¶¶ 139-41.) Count Five asserts a Section 1983 claim against Defendants for destroying Plaintiffs' home furnishings and personal effects. (Id. ¶¶ 142-43.) Count Six asserts a Section 1983 claim against John Doe Defendants for failure to intervene and protect Plaintiffs. (Id. ¶¶ 144-45.) Count Seven asserts a claim for assault and

battery under North Carolina law against Defendants.  (Id. ¶¶ 146-49.)  Count

Eight asserts an intentional infliction of emotional distress claim against

Defendants.  (Id. ¶¶ 150-51.)

Defendants moved to Dismiss the Second Amended Complaint in part, and

the District Court referred the motion to this Court.  The Motion to Dismiss is now

properly before this Court for a Memorandum and Recommendation to the District

Court.

## II.     Legal Standard

The central issue for resolving a Rule 12(b)(6) motion is whether the claims

state a plausible claim for relief.  See Francis v. Giacomelli, 588 F.3d 186, 189 (4th

Cir. 2009).  In considering Defendants' motion, the Court accepts the allegations in

the Second Amended Complaint as true and construes them in the light most

favorable to Plaintiffs.  Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591

F.3d 250, 253 (4th Cir. 2009); Giacomelli, 588 F.3d at 190-92.  Although the Court

accepts well-pled facts as true, it is not required to accept "legal conclusions,

elements of a cause of action, and bare assertions devoid of further factual

enhancement . . . ."  Consumeraffairs.com, 591 F.3d at 255; see also Giacomelli,

588 F.3d at 189.

The claims need not contain "detailed factual allegations," but must contain

sufficient factual allegations to suggest the required elements of a cause of action. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-65 (2007); see also Consumeraffairs.com, 591 F.3d at 256. "[A] formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555, 127 S. Ct. at 1965. Nor will mere labels and legal conclusions suffice. Id. Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009).

The Second Amended Complaint is required to contain "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570, 127 S. Ct. at 1974; see also Consumeraffairs.com, 591 F.3d at 255. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678, 129 S. Ct. at 1949; see also Consumeraffairs.com, 591 F.3d at 255. The mere possibility that a defendant acted unlawfully is not sufficient for a claim to survive a motion to dismiss. Consumeraffairs.com, 591 F.3d at 256; Giacomelli, 588 F.3d at 193. Ultimately, the well-pled factual allegations must move a plaintiff's claim from possible to plausible. Twombly, 550 U.S. at 570, 127 S. Ct. at 1974; Consumeraffairs.com, 591 F.3d at 256.

### III. Analysis

### A. The Section 1983 Claims Based on Actions Occurring More than Three Years Prior to Plaintiffs Bringing this Action are Time Barred

Although Section 1983 provides a plaintiff with a federal cause of action, courts look to state law for determining the statute of limitations for such a claim. Nat'l Adver. Co. v. City of Raleigh, 947 F.2d 1158, 1161 (4th Cir. 1991). The three year limitation period for personal injury actions set forth in N.C. Gen. Stat. § 1-52 provides the applicable limitations period for Plaintiffs' Section 1983 claims. Id. The accrual date of a Section 1983 claim, however, is a question of federal law. Wallace v. Kato, 549 U.S. 384, 388, 127 S. Ct. 1091, 1095 (2007); Brooks v. City of Winston–Salem, N.C., 85 F.3d 178, 181 (4th Cir.1996); Nasim v. Warden, Md. House of Corr., 64 F.3d 951, 955 (4th Cir. 1995). "Under federal law a cause of action accrues when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action." Nasim, 64 F.3d at 955.

Plaintiffs filed their Complaint on May 14, 2014. Thus, for Plaintiffs' Section 1983 claims to be timely, each cause of action must have accrued, at the latest, on May 14, 2011. All of the factual allegations concerning Defendants Woodson, Sizemore, and Harry Holden, however, occurred prior to May 14, 2011,

and accrued more than three years prior to Plaintiffs bringing this action. Thus, such claims are barred by the applicable statute of limitations. Moreover, any claims predicated on the numerous events in the Second Amended Complaint that occurred prior to May 14, 2011, are also time barred and subject to dismissal.

Plaintiffs, however, contend that despite occurring outside the limitations period, these claims are timely because they constitute a continuing violation. To establish a continuing violation, Plaintiffs must demonstrate that the unconstitutional or illegal act was a fixed and continuing practice, and that the challenged action was repeated within the applicable limitations period. Nat'l Adver., 947 F.2d at 1166-67. "In other words, if the plaintiff can show that the illegal act did not occur just once, but rather in a series of separate acts, and if the same alleged violation was committed at the time of each act, then the limitations period begins anew with each violation." A Society Without a Name v. Virginia, 655 F.3d 342, 348 (4th Cir. 2011) (internal quotations and citations omitted). However, "the continuing wrong theory should not be applied to relieve a plaintiff from its duty of reasonable diligence in pursuing its claims." The New Pulaski Co. Ltd. P'ship v. Mayor and City Council of Baltimore, 217 F.3d 840, 2000 WL 1005207, at *6 (4th Cir. 2000) (unpublished).

Here, Plaintiffs have failed to demonstrate that the continuing violation

doctrine saves Plaintiffs' claims that are otherwise time barred.  The Second

Amended Complaint sets forth numerous discrete acts occurring prior to May 14,

2011, many of which were actionable on their own when the events occurred.  For

example, Plaintiff Kitchen could have immediately filed a Section 1983 action

asserting claims against Defendant Barton based on his actions in allegedly holding

a pistol to Plaintiff Kitchen's forehead, threatening to kill him, and pulling the

trigger on an empty chamber such that Plaintiff Kitchen believed he was being

executed.  (Pls.' Sec. Am. Compl. ¶ 23.)  This is a discrete, actionable wrong that

is separate and distinct from the allegations involving Defendants Miller, Farmer,

Page, Whitmire, Greg Holden, and Galloway concerning the entry into Plaintiff

Kitchen's residence on May 14, 2011, as well as his subsequent arrest.  See

Holland v. Washington Homes, Inc., 487 F.3d 208, 219-20 (4th Cir. 2007) (holding

that continuing violation theory did not apply where plaintiff alleged discrete

violations of discrimination, even where those acts were related to defendant's

overarching policy of discrimination); O'Connor v. City of Newark, 440 F.3d 125,

127-28 (3rd Cir. 2006).   Plaintiffs may not revive these time barred claims by

generally alleging some general police conspiracy against him.    Plaintiffs could

have brought such claims during the relevant limitations period but failed to do so.

Accordingly, any such claims are now time barred.  The Court **RECOMMENDS**

that the District Court **GRANT** the Motion to Dismiss and **DISMISS** all claims

predicated upon conduct that allegedly occurred prior to May14, 2011.

### B. The Sections 1983 Claims against Defendants Barton and Thompson do not Relate Back to the Original Complaint

The Second Amended Complaint alleges that Defendant Barton arrested

Plaintiff Kitchen on May 15, 2011, for resisting Defendants Miller, Farmer and

Page. (Pls.' Sec. Am. Compl. ¶¶ 101, 104.)   In addition, the Second Amended

Complaint alleges that Defendant Thompson applied for search warrants using

false information on May 15, 2011, and May 19, 2011. (Id. ¶¶ 103, 107.)  These

allegations were not contained in the original Complaint.  As such, Defendants

contend that these claims are time barred because they were not brought within the

three year limitations period and do not relate back to the original Complaint.

As a threshold matter, it does not appear that the Second Amended

Complaint even sets forth a Section 1983 claim based on these acts.   Count Four

asserts the Section 1983 claim for false arrest based on Plaintiffs' arrest and

detention on April 19, 2011, and May 14, 2011.  Plaintiffs do not allege a claim

based on the May 15, 2011, arrest.  Similarly, Plaintiffs do not separately set forth

any claim based on the May 15, 2011, and May 19, 2011, search warrants.

Assuming, however, that the Second Amended Complaint does somehow

adequately assert Section 1983 claims based on the May 15, 2011, arrests and the

two search warrants, the claims are time barred because they do not relate back to the date of the original filing. Pursuant to Rule 15 of the Federal Rules of Civil Procedure, an amendment relates back when the amendment asserts a claim that arises out of the conduct, transaction, or occurrence set out in the original pleading. Fed. R. Civ. P. 15(c)(1)(B); <u>see also</u> See <u>Wilkins v. Montgomery</u>, 751 F.3d 214, 223 (4th Cir. 2014).  In applying Rule 15(c), the United States Court of Appeals for the Fourth Circuit as set forth two issues for courts to consider.  <u>Grattan v. Burnett</u>, 710 F.2d 160, 163 (4th Cir. 1983).  First, the Court should consider whether there is a factual nexus between the amendment and the original complaint.  <u>Id.</u>  Second, if there is some factual nexus the court should construe the amendment liberally to relate back to the original complaint if the defendant had notice of the claim and the defendant will not suffer prejudice by the amendment. <u>Id.</u>

First, there is no factual nexus between the new claims in the Second Amended Complaint and the Complaint.  Plaintiffs attempt to assert two entirely new claims in the Second Amended Complaint that are separate and distinct from the claims related to the entry into Plaintiffs residence on May 14, 2011.  These are entirely new causes of action based on factual allegations that were not included in the original Complaint. The original Complaint was devoid of any facts supporting

a claim for false arrest against Defendant Barton for arresting Plaintiffs on May 15, 2011. Similarly, the Complaint was devoid of facts supporting a claim related to the issuance of two search warrants to Defendant Thompson after May 14, 2011. In short, these are new claims based on new facts that could and should have been included in the Complaint. Moreover, neither Defendant Thompson nor Defendant Barton had notice of the claims prior to the expiration of the statute of limitations. As such, even assuming such claims were asserted in the Second Amended Complaint, the amendments do not relate back to the Complaint and are time barred.

## C. The Claims against the Individual Defendants

Plaintiffs specifically asserted claims against the Individual Defendants in only their official capacity. (See Pls.' Sec. Am. Compl. ¶¶ 5-6, 8-9, 114, 123-24, 128-29, 134, 140.) The Second Amended Complaint does not assert any claims against any of the Individual Defendants in their individual capacity. Because Plaintiffs specifically alleged official capacity claims against Defendants, Briggs v. Meadows, 66 F.3d 56 (4th Cir. 1995) ("[W]hen a plaintiff does not allege capacity specifically, the court must examine the nature of the plaintiff's claims, the relief sought, and the course of proceedings to determine whether a state official is being sued in a personal capacity."), is inapplicable to this case. See also Amos v. Md.

Dep't of Pub. Safety & Corr. Servs., 126 F.3d 589, 609 (4th Cir. 1997), vacated on other grounds, 524 U.S. 935, 118 S. Ct. 2339 (1998) ("The Biggs rule does not apply to the case before us. By the rule's own terms, it applies only 'when a plaintiff does not allege capacity specifically.'"); Francis v. Woody, Civil Action No. 3:09cv235, 2009 WL 1442015, at *4-5 (E.D. Va. May 22, 2009) (unpublished).  Accordingly, the Section 1983 claims asserted against the Individual Defendants are duplicative of the claims brought against the Governmental Defendants and are subject to dismissal.  Ridpath v. Bd. of Governors Marshall Univ., 447 F.3d 292, 307 n. 13 (4th Cir. 2006) (holding that official capacity Section 1983 claims against university administrators were duplicative of claims against the university's Board of Governors and subject to dismissal); Love–Lane v. Martin, 355 F.3d 766, 783 (4th Cir.2004) (holding that official capacity Section 1983 claims against school superintendent were duplicative of the claims against the school board and subject to dismissal.); Gaddy v. Yelton, No. 1:10cv214, 2011 WL 3608187 (W.D.N.C. Apr. 22, 2011) (Howell, Mag. J.); Evans v. Griess, No. 7:13-CV-128-BO, 2013 WL 5817239 (E.D.N.C. Oct. 23, 2013).  Plaintiffs' official capacity state law claims against the Individual Defendants are also subject to dismissal as being duplicative of the claims against the Governmental Defendants.  See Wright v. Town of Zebulon, 688 S.E.2d 786,

789 (N.C. Ct. App. 2010). Accordingly, the Court **RECOMMENDS** that the District Court **GRANT** the Motion to Dismiss and dismiss all the claims asserted against the Individual Defendants.

### D. The Claims against Sheriff Mahoney and Transylvania County

As an initial matter, any claims asserted against Defendant Sherriff Mohoney in his official capacity based on actions of sheriff deputies committed outside the statute of limitations period are subject to dismissal. Plaintiffs, however, contend that Defendants Mahoney and Transylvania County are liable as a result of their failure to adequately train and supervise various John Doe Defendants.

In order to hold a local government such as Transylvania County liable for a constitutional violation pursuant to Section 1983, a plaintiff must demonstrate that his or her injury was caused by an official custom or policy of the local governmental entity. Santos v. Frederick Cnty. Bd. of Comm'rs, 725 F.3d 451, 469-70 (4th Cir. 2013); Love-Lane v. Martin, 355 F.3d 766, 782 (4th Cir. 2004); Walker v. Prince George's Cnty., MD, 575 F.3d 426, 431 (4th Cir. 2009). "[A] municipality cannot be held liable simply for employing a tortfeasor." Riddick v. Sch. Bd. of City of Portsmouth, 238 F.3d 518, 522 (4th Cir. 2000). As the United States Court of Appeals for the Fourth Circuit explained in Riddick:

Because section 1983 was not designed to impose municipal liability under the doctrine of respondeat superior, the "official policy" requirement was "intended to distinguish acts of the municipality from acts of employees of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible."

Riddick, 238 F.3d at 523 (quoting Pembaur v. City of Cincinnati 475 U.S. 469, 479, 106 S. Ct. 1292, (1986)); see also Santos, 725 F.3d at 469-70; Spell v. McDaniel, 824 F.2d 1380, 1396-87 (4th Cir. 1987). "Only if a municipality subscribes to a custom, policy, or practice can it be said to have committed an independent act, the sine qua non of Monell liability." Owens v. Baltimore City State's Attorneys Office, 767 F.3d 379, 402 (4th Cir. 2014).

The Fourth Circuit has identified four ways in which a local governmental entity may be held liable based on a policy or custom:

(1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that "manifest [s] deliberate indifference to the rights of citizens"; or (4) through a practice that is so "persistent and widespread" as to constitute a "custom or usage with the force of law."

Lytle v. Doyle, 326 F.3d 463, 471 (4th Cir. 2003) (quoting Carter v. Morris, 164 F.3d 215, 217 (4th Cir. 1999); see also Harrison v. Chalmers, 551 F. Supp. 2d 432, 438 (M.D.N.C. 2008).

Here, Plaintiffs claim that Transylvania County and Sheriff Mahoney are

liable for their failure to train the sheriff deputies, as well as other individuals.  As a threshold matter, this is not a case where Plaintiffs are unaware of the officers who allegedly entered his residence and caused his injury.  Plaintiffs make specific factual allegations as to which Defendants entered his residence on May 14, 2011.  Each of these Defendants was employed by Defendant City of Brevard, not Defendant Transylvania County.  As such any claims against Transylvania County based on the actions of the police officers at Plaintiffs' residence are insufficient to state a claim against Transylvania County and Sheriff Mahoney and are subject to dismissal.   Similarly, the nebulous claims asserted in the Second Amended Complaint regarding John Doe first responders and firefighters are far too conclusory and speculative to state a claim.  (See e.g. Pls.' Sec. Am. Compl. ¶¶ 11, 145.)  The Court, therefore, **RECOMMENDS** that the District Court **GRANT** the motion as to such claims asserted in the Second Amended Complaint.

The Second Amended Complaint, however, does contain specific factual allegations as to certain John Doe Defendants.  John Doe # 1 is the individual who drove Plaintiff Kitchen away from the scene on May 14, 2011, and allegedly took the curves in the road intentionally too fast, such that Plaintiff Kitchen's cuffs cut into his wrists and ankles.  (Pls.' Sec. Am. Compl. ¶ 91.)  This same unidentified individual parked more than fifty yards from the entrance of the Transylvania

County Detention Center.  (Id. ¶ 92.)  John Does # 2, # 3, and # 4 then carried

Plaintiff by his cuffs approximately fifty yards to the entrance of the detention

center, causing Plaintiff pain.  (Id.)  The Second Amended Complaint alleges that

that Defendants Transylvania County and Sheriff Mahoney failed to adequately

train and supervise these John Doe defendants with respect to the rights of

arrestees and detainees, and that this deliberate indifference to his rights resulted in

his injury.  Although minimal, the Court finds that these factual allegations as to

John Does # 1- # 4 are sufficient to state a claim against Transylvania County and

Sheriff Mahoney for failure to train.  Accordingly, the Court **RECOMMENDS**

that the Court **DENY** the Motion to Dismiss only as to the Section 1983 failure to

train claims based on the actions of John Does # 1- # 4.

### E.    Leave to Amend

In response to the Motion to Dismiss, Plaintiffs also requests that the Court

grant them leave to amend if the Court determines that Defendants' motion has

merit.  A party, however, may not include a motion in a response brief.  LCvR

7.1(C)(2).  Because there is no motion to amend before the Court, this Court need

not address whether allowing Plaintiffs a third opportunity to assert viable claims

is appropriate in this case.

## IV.    Conclusion

The Court **RECOMMENDS** that the District Court **GRANT in part** and **DENY in part** the motion [# 16].  The Court **RECOMMENDS** that the District Court **GRANT** the motion in its entirety with the exception of the Section 1983 claims against Defendants Mahoney and Transylvania County based on the actions of John Does # 1- # 4.

Signed: April 15, 2015

Dennis L. Howell
United States Magistrate Judge

## <u>Time for Objections</u>

The parties are hereby advised that, pursuant to 28, United States Code, Section 636(b)(1)(C), and Rule 72, Federal Rules of Civil Procedure, written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen** (**14**) days of service of same. **Responses to the objections must be filed within fourteen (14) days of service of the objections.** Failure to file objections to this Memorandum and Recommendation with the district court will preclude the parties from raising such objections on appeal. <u>Thomas v. Arn</u>, 474 U.S. 140 (1985), <u>reh'g</u> <u>denied</u>, 474 U.S. 1111 (1986); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir.), <u>cert</u>. <u>denied</u>, 467 U.S. 1208 (1984).