# THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## ASHEVILLE DIVISION
## CASE NO. 1:14-cv-00122-MR-DLH

|  |  |  |
|---|---|---|
| MICHAEL A. KITCHEN & LISA CHARLENE HONEYCUTT, | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | **MEMORANDUM ORDER AND OPINION** |
| PATRICK BARTON, SHAWN MILLER, JASON PAGE, CHAD FARMER, AARON WHITMIRE, AARON THOMPSON, GREG HOLDEN, BARRY GALLOWAY, PHIL HARRIS, CITY OF BREVARD N.C., HARRY HOLDEN, BRIAN SIZEMORE, BRAD WOODSON, DAVID MAHONEY, TRANSYLVANIA COUNTY N.C., and JOHN DOEs NOS. 1 – 20, | ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

**THIS MATTER** is before the Court on the Defendants' Motion to Dismiss Second Amended Complaint [Doc. 16]; the Magistrate Judge's Memorandum and Recommendation regarding the disposition of such Motion [Doc. 33]; and the Plaintiffs' Objections to the Memorandum and Recommendation [Doc. 37].

# I. PROCEDURAL BACKGROUND

The Plaintiffs Michael A. Kitchen and Lisa Charlene Honeycutt ("Plaintiffs"), along with Natasha Sinclair, brought this action on May 14, 2014. [Doc. 1]. Six days later they filed a First Amended Complaint (hereinafter "FAC"), wherein all claims of Plaintiff Sinclair were omitted. [Doc. 2]. The Defendants responded to the FAC by filing a Motion to Dismiss. [Doc. 5]. With the consent of the Defendants, the Plaintiffs amended their Complaint a second time and filed their Second Amended Complaint (hereinafter "Amended Complaint") on August 20, 2014. [Doc. 12]. The Defendants again moved to dismiss on the basis that some claims were time-barred, and others were duplicative and should be dismissed. [Doc. 16].

There are eight claims for relief in the Amended Complaint. In Counts One, Three, Four, Five, and Six Plaintiffs assert Section 1983 claims against certain Defendants for their participation in the events on and leading up to May 14, 2011. Those claims include unlawful arrest, use of excessive force, deprivation of property without due process, and failure to intervene to

protect Plaintiffs.  In Counts Two and Three[1] Plaintiffs assert supervisory liability pursuant to Section 1983 against Defendant Harris, who is the Chief of Police of the Brevard Police Department; Defendant Mahoney, who is the Sheriff of Transylvania County; and the City of Brevard, North Carolina.  In these claims Plaintiffs assert a failure to train, supervise, and implement appropriate policies.  In Counts Seven and Eight Plaintiffs assert North Carolina common law claims against the Defendants for assault and battery and intentional infliction of emotional distress.  [Doc. 12].

Pursuant to 28 U.S.C. § 636(b) and the Standing Orders of Designation of this Court, the Honorable Dennis L. Howell, United States Magistrate Judge, was designated to consider the Defendants' motion and to submit a recommendation regarding its disposition.  On April 15, 2015, the Magistrate Judge entered a Memorandum and Recommendation recommending that the Defendants' motion be granted in part and denied in part.  [Doc. 33].

Specifically, the Magistrate Judge recommended that: 1) the Section 1983 claims based upon actions occurring prior to May 14, 2011, be dismissed because the Plaintiffs failed to bring those claims within the three-

---

[1] Count Three sets forth both direct and supervisory claims.

year statute of limitations [Id. at 9-12]; 2) the Section 1983 claims added into the Amended Complaint based upon actions occurring after May 14, 2011, be dismissed because the claims were not brought within the three-year statute of limitations period and do not relate back to the original Complaint [Id. at 12-14]; 3) none of the Defendants were sued in their individual capacity, and therefore any claims against them were in their official capacity [Id. at 14-15]; 4) the official capacity claims against the individual defendants should be dismissed as duplicative of the claims brought against the Government Defendants [Id. at 14-16]; 5) any failure-to-train claims against Transylvania County and Sheriff Mahoney for the actions of any police officers be dismissed because those individuals were exclusively employed by the City of Brevard [Id. at 16-18]; 6) the motion to dismiss be denied as to the failure-to-train claims against Transylvania County and Sheriff Mahoney based upon the actions of John Doe Defendants #1-#4 [Id. at 16-19]; and 7) the claims against any John Doe first responders and firefighters be dismissed because the claims were too nebulous and speculative to state a claim on which relief may be granted. [Id.].

At the outset, this Court notes that the Plaintiffs do not object to the recommendation that the claims against Sheriff Mahoney and Transylvania

County be dismissed for the alleged failure to train the City of Brevard police officers. The Plaintiffs also do not object to the recommendation that any claims based thereon should be dismissed. The Plaintiffs also do not object to the recommendation that any official capacity claim against any individual deputy or police officer is duplicative and should be dismissed.

Having reviewed the recommendations and the record it appears that the dismissal of these claims is proper and consistent with the law. The Court accepts these findings and recommendations of the Magistrate Judge and hereby **DISMISSES** the claims identified above.

The Plaintiffs, however, have filed timely objections to several of the Magistrate Judge's Recommendations. Specifically, the Plaintiffs argue that: 1) claims predicated upon conduct occurring prior to May 14, 2011, are not barred by the statute of limitations [Doc 37 at 11]; 2) the claims against Barton and Thompson relate back to the original Complaint [Id. at 8-11]; 3) the Amended Complaint states claims against the individual Defendants in their individual capacities [Id. at 2-7]; 4) the Amended Complaint sufficiently states a claim to hold Transylvania County liable for failure to train based upon the actions of first responder and firefighter John Does [Id. at 13]; and 5) Sheriff Mahoney's liability for failure to train should include the April 19,

2011, actions by Defendants H. Holden, Sizemore, and Woodson, even though those claims are barred by the statute of limitations.  [Id. at 12-13].[2]

The Defendants have responded, asking the Court to adopt the Recommendation in its entirety.  [Doc. 39].[3]  Having been fully briefed, this matter is ripe for review.

## II.     STANDARD OF REVIEW

### A.     Standard of Review Applicable to Objections to Magistrate Judge's Proposed Findings and Recommendation

The Federal Magistrate Act requires a district court to "make a *de novo* determination of those portions of the report or specific proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1).  In

---

[2] The Plaintiffs further argue that the Sheriff Mahoney "failure to train" liability should also be based on the actions of unknown Defendants as described in paragraph 86 of the Amended Complaint.  [Doc. 12 at 12].  The Court need not address this argument, however, because the Magistrate Judge's recommendation was limited to denying Mahoney's liability for any actions by police officers who are exclusively employed by the City of Brevard.

[3] While not objecting to the recommendations of the M&R, the Defendants "point out" that Sheriff Mahoney, not Transylvania County, is the only proper defendant for the Plaintiffs' failure to train claims, based on the actions of Defendant John Does #1-#4.  They assert that the deputies are directly employed by the Sheriff, not by the county or a county department.  [Doc. 39 at 7].  To the contrary, as this Court recently held in Wilcoxson v. Buncome County, a County may be held liable for a Sheriff's failure to train, because the Sheriff is the ultimate policy maker for the County with regard to law enforcement.  No. 1:13-cv-000224-MR-DSC (W.D.N.C. August 20, 2014).

order "to preserve for appeal an issue in a magistrate judge's report, a party must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection." United States v. Midgette, 478 F.3d 616, 622 (4th Cir. 2007). The Court is not required to review, under a *de novo* or any other standard, the factual or legal conclusions of the magistrate judge to which no objections have been raised. Thomas v. Arn, 474 U.S. 140, 150 (1985). Additionally, the Court need not conduct a *de novo* review where a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982).

### B. Rule 12(b)(6) Standard

In order to survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). To be "plausible on its face," a plaintiff must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 129 S.Ct. at 1949.

> [T]he Supreme Court has held that a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." To discount such unadorned conclusory allegations, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are not more than conclusions, are not entitled to the assumption of truth." This approach recognizes that "naked assertions" of wrongdoing necessitate some "factual enhancement" within the complaint to cross "the line between possibility and plausibility of entitlement to relief."
>
> At bottom, determining whether a complaint states on its face a plausible claim for relief and therefore can survive a Rule 12(b)(6) motion will "be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief,' " as required by Rule 8.... [E]ven though Rule 8 "marks a notable and generous departure from the hyper-technical, code pleading regime of a prior era . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."

Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (quoting Twombly, 550 U.S. at 555, 557, 127 S.Ct. 1955 and Iqbal, 129 S.Ct. at 1950) (citations omitted).

## III.  FACTUAL BACKGROUND

The Magistrate Judge summarized the relevant facts as alleged in the Second Amended Complaint as follows:

Plaintiffs Michael A. Kitchen and Lisa Charlene Honeycutt are residents of Transylvania County, North Carolina. From 2009 until May 14, 2011, Plaintiffs Kitchen and Honeycutt resided together in an apartment complex in Brevard, North Carolina. In February of 2009, a jury in the United States District Court for the Western District of North Carolina found in favor of Plaintiff Kitchen in an employment discrimination case. The jury awarded Plaintiff Kitchen compensatory and punitive damages. After this favorable jury verdict, Plaintiffs contend that police officers with the Brevard Police Department and deputies with the Transylvania County Sherriff's Department began a coordinated campaign of intimidation and oppression against Plaintiffs.

As part of this campaign of intimidation and oppression, Plaintiffs point to a number of events that occurred between 2009 and early 2011. Prior to early 2011, Defendant Patrick Barton, who was acting under color of state law in his capacity as a police officer with the City of Brevard held a cigarette lighter to Plaintiff Kitchen's beard and threatened to burn off his beard, made derogatory, racial slurs and threats directed at Plaintiff Kitchen, and held a pistol to Plaintiff Kitchen's head and threatened to kill him. Defendant Barton and Defendant Aaron Thompson, who was also acting under color of state law in his capacity as a police officer with the City of Brevard, told Plaintiff Kitchen that he was under surveillance by the Department of Homeland Security, and threatened Plaintiff. On one or more occasions, Defendants Chad Farmer, Jason Page, Shawn Miller, Aaron Whitmire, Greg Holden, and Brian Sizemore, who were all acting under color of state law in either their capacity as police officers with the City of Brevard or as deputy sheriffs employed by Transylvania County, brandished their weapons outside Plaintiffs' apartment for the sole purpose of terrifying Plaintiffs

On April 19, 2011, Defendant Barton and other Defendants struck Plaintiffs' front door with a battering instrument. When Plaintiff Kitchen opened the door, Defendant Barton ordered Plaintiff Kitchen outside at gunpoint and pointed his gun directly

at Plaintiff Kitchen's face.  Defendant Barton then choked Plaintiff Kitchen until he passed out.  Plaintiff Kitchen was handcuffed, arrested, and then taken by squad car to the Transylvania County Magistrate Court.  Defendants Greg Holden, Harry Holden, Brad Woodson, and Sizemore were all present at the time, and each made racist remarks towards Plaintiff Kitchen. The Magistrate, however, declined to charge Plaintiff Kitchen with a criminal offense and released Plaintiff Kitchen.

On May 14, 2011, Defendants Miller, Farmer, Page, Whitmire, Greg Holden, and Barry Gallaway forced their way into Plaintiffs' apartment.  Defendant Miller than grabbed Plaintiff Kitchen and placed him in a chokehold while ordering him to the floor. Defendant Farmer or Defendant Page then tackled Plaintiff Kitchen by the legs while Defendant Miller forced his head to the floor.  Defendant Miller pinned Plaintiff Kitchen's neck to the floor with his foot and began inflicting pain on Plaintiff Kitchen by forcing his left arm away from his torso before he placed Plaintiff Kitchen in handcuffs.  Meanwhile, Defendant Farmer, Defendant Whitmire, or Defendant Page forced Plaintiff Honeycutt to the ground, placed her in handcuffs, and intentionally inflicted pain on her.  Defendant Whitmore eventually removed Plaintiff Honeycutt from the apartment, injuring her knees.

After someone removed the handcuffs from Plaintiff Kitchen's wrist, one of the Defendants shot Plaintiff Kitchen with a Taser. Several of the Defendants then began to pepper spray Plaintiff Kitchen and continued shooting him with a Taser.  At some point, Plaintiff Kitchen's clothes caught on fire.  A struggle between Defendant Page or Defendant Farmer and another resident of the apartment ensued, which resulted in lighter fluid and kerosene spilling on the floor.  The fire then began to spread throughout the apartment.  Once the fire started to spread, Defendants ran out of the apartment, leaving Plaintiff Kitchen in the burning apartment.

Plaintiff Kitchen eventually ended up outside the apartment, where he was tackled, restrained, shot with a Taser again, and thrown in the back of a patrol car. An unnamed police officer or sheriff's deputy then transported Plaintiff Kitchen to the Transylvania County Detention Center, where he remained until he was transported to the hospital for a decontamination several hours later. Defendants, however, prevented Plaintiff Kitchen from receiving medical care for his injuries that night by falsely informing the hospital that he had refused medical treatment.

The next day, Defendant Barton arrested Plaintiffs Kitchen and Honeycutt, despite knowing that Kitchen was not in fact guilty of the charges. Magistrate Rickey Lambert charged Plaintiff Kitchen with four counts of resisting a public officer on May 15, 2011. Magistrate Lambert charged Plaintiff Honeycut with one count of resisting a public officer, but the charge was subsequently dismissed.

On May 15, 2011, Defendant Thompson also submitted an application for a search warrant for Plaintiff Kitchen's residence. Plaintiffs allege that Defendant Thompson knew the application was based on false information. After the first search of the apartment failed to reveal any evidence against Plaintiffs, Defendant Barton applied for a second search warrant on May 19, 2011.

Plaintiffs then brought this action on May 14, 2014, asserting a number of claims against Defendants. Count One asserts a Section 1983 claim against all of the Defendants for deprivation of Plaintiffs' rights as secured by the Fourth and Fourteenth Amendment to the United States Constitution. Count Two asserts a Section 1983 claim against Defendant Harris in his capacity as Chief of Police for the Brevard Police Department and Defendant Mahoney in his capacity as Sheriff of Transylvania County for failure to adequately train and supervise their employees. Count Three asserts a Section 1983 claim against Defendants for use of excessive force. Count Four

asserts a Section 1983 claim against Defendants for false arrest. Count Five asserts a Section 1983 claim against Defendants for destroying Plaintiffs' home furnishings and personal effects. Count Six asserts a Section 1983 claim against John Doe Defendants for failure to intervene and protect Plaintiffs. Count Seven asserts a claim for assault and battery. Count Eight asserts an intentional infliction of emotional distress claim against Defendants.

[Doc. 33 at 2-7 (citations and headings omitted)].

No specific objections were made regarding the Magistrate Judge's recitation of the alleged facts, and upon careful review, this Court finds this rendition of the facts to be an accurate summary of the allegations of the Amended Complaint. Accordingly, the factual background as set forth in the Memorandum and Recommendation [Doc. 33 at 2-7] and incorporated herein is accepted.

## IV. DISCUSSION

Plaintiffs' allegations of Defendants' misconduct can properly be divided into three phases: 1) conduct prior to May 14, 2011; 2) conduct after May 14, 2011; and 3) conduct on May 14, 2011. The Magistrate Judge recommended dismissing all claims related to the first and second phases as being time-barred. The Magistrate Judge further recommended that some of the claims based upon conduct on May 14, 2011, also be dismissed.

## A.    Conduct Occurring Prior to May 14, 2011

The Magistrate Judge concluded that all claims arising from conduct prior to May 14, 2011, were barred by the statute of limitations.  [Doc. 33 at 9-10].  Based thereon, the Magistrate Judge recommended that this Court dismiss any claims predicated upon such conduct, consequently dismissing all claims against Defendants Woodson, Sizemore, and Harry Holden.  [Id. at 11-12].

"[T]o preserve for appeal an issue in a magistrate judge's report, a party must object to the finding or recommendation on that issue with sufficient specificity so as to reasonably alert the district court of the true ground for the objection."  United States v. Midgette, 478 F.3d 616, 622 (4th Cir. 2007).  The Court need not conduct a *de novo* review where a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations."  Orpiano, 687 F.2d at 47.

The Plaintiffs' Objections to Memorandum and Recommendation contains a section titled "Objection III: The recommendation to dismiss all claims predicated upon conduct occurring prior to May 14, 2011."  Plaintiffs fail to direct this Court to any specific error made by the Magistrate Judge.

[Doc. 37 at 11]. To the contrary, the Plaintiffs concede that the "M&R's cited authority for its recommendation appears to be sound under Fourth Circuit jurisprudence . . . ." [Id.]. In a section identified as "Objection IV" the Plaintiffs assert Sheriff Mahoney should remain liable for failing to train based upon these same actions that are time-barred by the statute of limitations. Plaintiffs argue that the Sheriff's failure to train certain deputies during this earlier period "may likely, through discovery, be shown to have set the stage for and facilitated the climate of disregard and oppression." [Id. at 13]. Plaintiffs, however, make no argument and cite no authority for how such a derivative failure to train claim is saved from the statute of limitations. The specific conclusions of the Magistrate Judge as to this issue are not challenged at all.

Because the Plaintiffs did not identify any specific error in the Memorandum and Recommendation, the Plaintiffs have failed to preserve any issue for appeal. See Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985). Accordingly, this Court is not obliged to conduct a *de novo* review.

There being no objections, this Court adopts the Magistrate Judge's conclusion that the Plaintiffs' claims predicated upon conduct occurring prior to May 14, 2011, including all claims against Defendants Woodson,

Sizemore, and H. Holden, are time-barred. Further, the Court accepts the Magistrate Judge's recommendation that all claims based on conduct occurring prior to May 14, 2011, be dismissed.

### B. Conduct Occurring After May 14, 2011

In their Amended Complaint (filed August 20, 2014), the Plaintiffs add allegations concerning events taking place after May 14, 2011, and through August 19, 2011. As such, these claims are time-barred unless they relate back to the filing of the original Complaint. The Magistrate Judge concluded that they do not, and recommended dismissal of these additional claims. Plaintiffs object to this recommendation. [Doc. 37 at 8-11].

Although no new Counts were added, the Amended Complaint adds several factual allegations that were not included in the original Complaint. Relevant to this dispute, the Amended Complaint newly alleges that on May 15, 2011, Barton spoke with Miller, Farmer, and/or Page, and then arrested Kitchen for resisting arrest. The Plaintiffs allege Barton "intentionally participated in cover-up activities" and made the arrest despite knowing Kitchen was not guilty of the stated charges. [Doc. 12 ¶ 101]. They also alleged that Barton facilitated a cover-up by applying for a second search warrant based upon evidence he knew to be false or specious. [Doc. 12 ¶

107].  Against Defendant Thompson, the Plaintiffs allege that after speaking with Miller, Farmer, Page and/or Barton, he applied for a search warrant on May 15, 2011, based upon hearsay evidence he knew to be false.  [Doc. 12 ¶ 103].

The Magistrate Judge correctly observed that the Amended Complaint does not appear to set forth a Section 1983 claim based upon these additional factual allegations.  [Doc. 33 at 12].  Plaintiffs certainly have not done so clearly.[4]  Having added factual allegations but no new Counts, the Plaintiffs appear to ask this Court to divine which claims arise from these additional facts out of the laundry list of offenses recited in Count I.[5]

"[T]he Supreme Court has held that a complaint must contain 'more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'"  <u>Francis</u>, 588 F.3d at 193 (quoting <u>Twombly</u>, 550

---

[4] The preferred practice of pleading is to state various claims for relief in separate counts.  <u>See</u> Fed. R. Civ. P. 10(b).  Otherwise, the burden falls on the Court, as it has here, to decipher which facts support which claims, as well as to determine whether the plaintiffs are entitled to the relief sought.

[5] Count IV asserts a Section 1983 claim for Plaintiffs' false arrest on April 19, 2011, and May 14, 2011, but fails to mention any arrest on May 15, 2011.  Similarly, none of the eight Counts in the Amended Complaint states a claim for obtaining a warrant based upon false or evidence.  Count I, however, liberally seeks damages for any and all claims under the Fourth and Fourteenth Amendment, either presently set forth or as may be proven at trial.

U.S. at 557 and Iqbal, 556 U.S. at 678) (citations and internal quotation marks omitted).

The Plaintiffs allege that Barton, in order to participate in "cover-up activities," arrested the Plaintiffs based upon evidence he knew to be false. However, they do not identify *what* "evidence" Barton knew or relied on, *how* he knew it was false, or *why* the facts relied upon by Barton led to an unlawful arrest. The Plaintiffs only claim that Barton spoke to Miller, Farmer, and/or Page, and somehow concluded from this interaction that Kitchen was not guilty. Similarly, the Plaintiffs assert that both Barton and Thompson wrongfully applied for search warrants, with nothing more than a bare allegation that these Defendants relied on evidence they knew to be false. Despite having had three separate chances to articulate their claims, the Plaintiffs offer precisely the kind of formulaic recitation of labels and conclusions that fail to state a claim under Rule 12(b)(6).

Even if the Plaintiffs had stated a claim, however, the allegations against Barton and Thompson do not relate back. An amendment relates back when the amendment asserts a claim that arises out of the conduct, transaction, or occurrence set out in the original pleading. Fed. R. Civ. P. 15(c)(1)(B); see also Wilkins v. Montgomery, 751 F.3d 214, 223 (4th Cir.

2014). The United States Court of Appeals for the Fourth Circuit has instructed courts to consider two issues when applying Rule 15(c). <u>Grattan v. Burnett</u>, 710 F.2d 160, 163 (4th Cir. 1983). First, the Court should consider whether there is a factual nexus between the amendment and the original complaint. <u>Id.</u> Second, if there is some factual nexus, the court should construe the amendment liberally to relate back to the original complaint if the defendant had notice of the claim and the defendant will not suffer prejudice by the amendment. <u>Id.</u> "An amended complaint will not relate back . . . if it states an entirely new cause of action based on facts different from the facts alleged in the original complaint." <u>Hooper v. Sachs</u>, 618 F. Supp. 963, 977 (D. Md. 1985), <u>aff'd</u>, 823 F.2d 547 (4th Cir. 1987).

The arrests of May 14, 2011, and May 15, 2011, do not constitute the same conduct, transaction, or occurrence. As alleged by the Plaintiffs, the arrests on May 14, 2011, and May 15, 2011, were on two different days, for two different reasons, by completely different arresting officers.[6] The original

---

[6] The Plaintiffs submitted several new exhibits attached to their objections to the Memorandum and Recommendation that purportedly demonstrate the connection between the newly added claims and the original Complaint. While the Court *may* accept new evidence offered in conjunction with a 12(b)(6) motion, it is disfavored, and the Court declines to do so here. <u>Caldwell v. Jackson</u>, 831 F. Supp. 2d 911, 914 (M.D.N.C. 2010). The Plaintiffs offer no justification for their failure to present this evidence earlier, and

Complaint accuses Defendants Miller, Farmer, Page, Whitmore, G. Holden, and Galloway of wrongfully arresting Kitchen on May 14, 2011, pursuant to a warrant charging Kitchen with misdemeanor stalking and disorderly conduct. The Amended Complaint accuses Defendant Barton of wrongfully arresting Kitchen on May 15, 2011, pursuant to a warrant for resisting arrest.

As the Magistrate Judge aptly noted, the original Complaint was devoid of any facts supporting a claim for false arrest on May 15, 2011, or the wrongful issuance of search warrants on May 15, and May 19, 2011. More to the point, the original Complaint does not contain a factual statement or allegation of misconduct by <u>any</u> Defendant on those dates, particularly not Barton or Thompson. Although the original Complaint discusses events occurring before and after May 15-19, 2011, factual allegations related to those intermediate dates are conspicuously absent from the original Complaint. If the Plaintiffs sought to prosecute a claim based on those events of May 15-19, it was incumbent upon the Plaintiffs to present them, but they failed to do so.

---

parties should be discouraged from holding back in the proceedings before the Magistrate Judge. <u>See</u> <u>Callas v. Trane CAC Inc.</u>, 776 F. Supp. 1117, 1119 (W.D. Va. 1990).

Similarly, the additional claims are entirely new. Specifically, the Amended Complaint accuses Barton and Thompson of applying for search warrants with evidence they knew to be false. Even a generous interpretation of the original Complaint fails to reveal a claim relating to the request of search warrants based upon false information. Although the Plaintiffs' original Complaint included claims for unlawful arrest, the Plaintiffs expressly limited those claims to the arrests on April 19, 2011, and May 14, 2011.

Even assuming some nexus exists between the facts alleged in the Amended Complaint regarding May 15-19 and the facts alleged in the original Complaint, in order for those allegations to related back the original Complaint must put the Defendants on notice regarding the claim asserted in the amended pleading. Hooper v. Sachs, 618 F. Supp. 963 (1985). The Plaintiffs point to paragraph 117 of the original Complaint as putting Defendants Barton and Thompson on notice of these additional claims:

> In violating the Plaintiffs' rights as set forth above, and in violating other rights as may be proven at trial, the Defendants acted under color of state law to conduct unauthorized, warrantless illegal searches, seizures and arrests of the Plaintiffs. The illegal and warrantless entries set into motion the chain of events which led to an unauthorized and warrantless illegal searches and seizures and the use of excessive force by Defendants, in

> violation of the Plaintiffs' rights under the Fourth, Fifth and
> Fourteenth Amendments to the Constitution of the United States.

[Doc. 1 ¶ 117]. This, however, is insufficient to put the Defendants on notice of the additional claims. Reciting every applicable Constitutional Amendment, including "other rights as may be proven at trial" hardly gives the Defendants notice they may also be accused of relying on false information or participating in a cover up.

In sum, the Amended Complaint fails to state a claim based upon the new allegations against Barton and Thompson. Even if a claim had been stated, however, this amendment does not relate back because the amendment does not arise from the same conduct, transaction, or occurrence set forth in the original Complaint, and the original Complaint did not put the Defendants on notice of such additional claims. For these reasons, the Plaintiffs' objections to the Magistrate Judge's recommendation are overruled. The new claims against Defendants Barton and Thompson, based upon conduct alleged to have occurred on May 15, 2011, and May 19, 2011, are hereby dismissed.

## C.    Conduct Occurring On May 14, 2011

The Court has overruled the Plaintiffs' objections and accepted the Magistrate Judge's recommendation that the claims arising from conduct occurring before and after May 14, 2011, be dismissed.  As a result, no claims remain against Defendants Woodson, Sizemore, H. Holden, Barton, and Thompson.  The Court also has accepted the Magistrate Judge's recommendation that any official capacity claims against the individual deputy sheriffs and police officers is duplicative of the claims against the Governmental Defendants.  As a result, the only official capacity claims remaining are those claims against Mahoney, Harris, the City of Brevard and Transylvania County.  Finally, the Court has also accepted the Magistrate Judge's recommendation the Court dismiss the claims against Sheriff Mahoney and Transylvania County based on the actions of the police officers employed by the City of Brevard.  There are two remaining issues before this Court, both arising from the events of May 14, 2011.

### 1.    Claims Against Individual Defendants

The Plaintiffs object to the Magistrate Judge's finding that the Amended Complaint fails to state a claim against any Defendant in his individual capacity.  [Doc. 33 at 14].  The Defendants argue the following

paragraphs within the Amended Complaint unambiguously show the Plaintiffs have sued the Defendants only in their official capacity: "[e]ach of these Defendants was at all times material to the allegation of this Complaint acting in his capacity as a police officer employed by the City of Brevard N.C. and acting under color of state law" [Doc 12 ¶ 5]; and "[e]ach of the Defendants, individually, and in concert with the others, acted under color of law in his, her, or their official capacity, to deprive the Plaintiffs of their rights . . . ." [Doc. 12 ¶ 114]. As pointed out by the Defendants, the words "individual capacity" do not appear anywhere within the Amended Complaint.

The Plaintiffs have simply and inartfully recited the Section 1983 "buzz words" without considering their significance or how they would likely be interpreted. Citing Hafer v. Melo, 502 U.S. 21 at 25 (1991), the Plaintiffs argue the Amended Complaint's allegation of capacity "do[es] not speak to the capacity in which the Plaintiffs have sued the state officer, but rather to the capacity in which the officer inflicts the alleged injury." [Doc. 37 at 5-6]. To the contrary, the United States Supreme Court noted in that case that "[t]he phrase, 'acting in their official capacities' is best understood as a reference to the capacity in which the state officer is sued, not the capacity in which the officer inflicts the alleged injury." Hafer, 502 U.S. at 26.

Notwithstanding their misapplication of Hafer, the Plaintiffs argue that if the allegations in the Amended Complaint are taken in the light most favorable to them that individual capacity claims are sufficiently asserted.

Both parties cite Biggs v. Meadows 66 F.3d 56 (4th Cir. 1995) as controlling, but they differ on its application.   In Biggs, the Court held that "[w]hen a plaintiff does not alleged capacity specifically, the court must . . . determine whether a state official is being sued in a personal capacity."   Id. at 67.  The crux of their dispute is whether the Amended Complaint alleges capacity sufficiently to preclude this Court from applying Biggs to determine whether the state officials have been sued in an individual capacity.

Paradoxically, the Defendants argue that by examining the Amended Complaint, this Court will determine that no examination under Biggs is necessary.  Citing Amos v. Md. Dep't of Pub. Safety, 126 F.3d 589 (4th Cir. 1997), they contend Biggs is inapplicable because the language "acting in his official capacity" in paragraphs 5 and 114 of the Amended Complaint unambiguously shows the Plaintiffs have specifically alleged the capacity in which the Defendants are sued.  The Defendants conclude that the Plaintiffs have pleaded themselves out of their individual capacity claims.

The Defendants misapply <u>Biggs</u>. In that case the Court of Appeals rejected a strict and mechanical reading of a complaint. <u>Biggs</u>, 66 F.3d at 61 ("Throughout, the underlying inquiry remains whether the plaintiff's intention to hold a defendant personally liable can be ascertained fairly."); <u>see also</u> <u>Nelson v. Strawn</u>, No. 95-7444, 1996 WL 84447, at *2 (4th Cir. Feb. 28, 1996) (concluding review of the complaint was necessary even if plaintiff had expressly stated his claims were only against the defendants as officials because the body of the complaint revealed the contrary); <u>Castle v. Wolford</u>, No. 97-2183, 1998 WL 766724, at *3 (4th Cir. Oct. 20, 1998) (ordering the district court to conduct a <u>Biggs</u> analysis even though the caption named the defendants by title, and pleadings alleged the defendants acted under pretense and color of law and his or her official capacity).[7]  In making their argument, Defendants avoid a holistic overview of the Amended Complaint

---

[7] The cases cited by the Defendants do not require a different result. The present case is distinguishable because unlike the cases cited, the caption here names all of the Defendants without any reference to their title (e.g. "sheriff," "deputy," "officer") or the capacity in which they are sued ("individually" or "in his official capacity"). <u>See</u> <u>e.g.</u>, <u>Amos v. Md. Dep't of Pub. Safety</u>, 126 F.3d 589 at 608-09 (4th Cir. 1997) (declining to apply <u>Biggs</u> because the caption named the two individual defendants "in his official capacity," and plaintiffs conceded they were only suing the defendants in their official capacities); <u>Francis v. Woody</u>, No. 3:09cv235, 2009 WL 1442015, at *5 (E.D. Va. May 22, 2009) (holding <u>Biggs</u> inapplicable after finding the caption named the defendant "in his capacity as sheriff"); <u>Davoll v. Webb</u>, 943 F. Supp. 1289, 1295 (D. Colo. 1996) (concluding consideration of the course of proceedings was unnecessary because the caption of the complaint, which named the individual defendants in his/her official capacity, was clear).

and focus solely on friendly language, ignoring telltale signs of individual claims such as the request for compensatory and punitive damages.

For the above reasons, the Court declines to accept the Magistrate Judge's conclusion that the Plaintiffs specifically plead capacity in the Amended Complaint, and therefore shall proceed to determine whether individual capacity claims may be found under <u>Biggs</u>.

 "[T]o establish personal liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right."  <u>Kentucky v. Graham</u>, 473 U.S. 159, 166 (1985).  As the <u>Biggs</u> Court explained:

> When a plaintiff does not allege capacity specifically, the court must examine the nature of the plaintiff's claims, the relief sought, and the course of proceedings to determine whether a state official is being sued in a personal capacity.  One factor indicating that suit has been filed in such a manner might be the plaintiff's failure to allege that the defendant acted in accordance with a governmental policy or custom, or the lack of indicia of such a policy or custom on the face of the complaint.  Another indication that suit has been brought against a state actor personally may be a plaintiff's request for compensatory or punitive damages, since such relief is unavailable in official capacity suits.  The nature of any defenses raised in response to the complaint is an additional relevant factor.  Because qualified immunity is available only in a personal capacity suit, the assertion of that defense indicates that the defendant interpreted the plaintiff's action as being against him personally.  Throughout, the underlying inquiry remains whether the plaintiff's

> intention to hold a defendant personally liable can be ascertained
> fairly.

Biggs, 66 F.3d at 61 (4th Cir. 1995) (internal citations and quotations omitted).

Here, the Plaintiffs have alleged all of the Defendants acted under color of state law causing the deprivation of their federal rights. They are seeking compensatory and punitive damages. They do not portray the named officers as a collective alter ego, but rather claim the named individual Defendants severally abused their positions while acting in concert. The caption identifies the Defendants by name without their official titles, or reference to the capacity in which they are sued. Excluding Counts Two and Three, the Plaintiffs do not allege the Defendants acted in accordance with a governmental policy or custom. Counts Seven and Eight, both state law claims, are clearly intended to be brought against the individual defendants.

Based on the foregoing, this Court declines to accept the recommendation of the Magistrate Judge, and concludes the Plaintiffs have stated a claim against the remaining named Defendants and John Does #1-#4 in their individual capacities. Accordingly, the Defendants' Motion to Dismiss all individual capacity claims is hereby denied.

The Court notes, however, that there is nothing in the record to indicate that the Plaintiffs have served any of the John Doe #1-#4 Defendants. Rule 4(m) of the Federal Rules of Civil Procedure provides, in pertinent part, as follows:

> If a defendant is not served within 120 days after the complaint is filed, the court – on motion or on its own after notice to the plaintiff – must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m).

The Plaintiffs are hereby placed on notice that unless good cause is shown to the Court for their failure to effect service of the Summons and Complaint on Defendants John Doe #1-#4 within fourteen (14) days the entry of this Order, the Plaintiffs' action against these Defendants shall be dismissed.

### 2. Claims Against Transylvania County for Failure to Train Based Upon Conduct by First Responder and Firefighter John Does

Finally, the Plaintiffs contend that the Magistrate Judge erred in concluding that the claims against the John Doe firefighters and first

responders were too nebulous and conclusory to state a claim.  The Plaintiffs argue based upon an exhibit which was not attached to or incorporated into the Amended Complaint; therefore it has not been considered.  In addition, Plaintiffs base their objections on certain paragraphs from the pleadings which they contend serve to state a claim.

In this claim the Plaintiffs have alleged only that Transylvania County should be liable for failing to properly train and supervise up to twenty, currently-unknown John Doe defendants, who *might* be employed at any one of several county agencies, and who *might* have acted or failed to act in such a way as to create liability.  [Doc. 12 ¶ 11].  Without stating *what* treatment the Plaintiffs' received, *when* it was received, *how* it was inappropriate, or *who* rendered this care or trained those giving it, the Plaintiffs conclude the medical treatment provided by these unknown defendants was not "timely" or "appropriate."  [Doc. 12 ¶¶ 90, 98].  This is precisely the kind of bare recitation of elements, conclusions, and labels deemed insufficient by the United States Supreme Court.  <u>Twombly</u>, 550 U.S. at 555 (holding Plaintiffs must do more than plead labels, conclusions, and a formulaic recitation of the elements of a cause of action to state a claim).

In the Amended Complaint the Plaintiffs assert little more than the "sheer possibility that the Defendant has acted unlawfully." <u>Iqbal</u>, 129 S.Ct. at 1949. That is insufficient. <u>Id.</u> Having reviewed the record, and specifically those pleadings referenced by the Plaintiffs, the Court concludes that the Plaintiffs' claims against first responders and firefighter John Does are too nebulous and conclusory to state a claim. Based thereon, the Court accepts the recommendation of the Magistrate Judge that the claims against John Doe first responders and firefighters be dismissed.

## V.    ORDER

**IT IS, THEREFORE, ORDERED** that the Plaintiffs' Objections to the Memorandum and Recommendation [Doc. 39] are **SUSTAINED IN PART**, and the Magistrate Judge's Memorandum and Recommendation [Doc. 33] is **ACCEPTED IN PART**.

**IT IS FURTHER ORDERED** that the Defendants' Motion to Dismiss [Doc. 16] is **GRANTED IN PART**, and the following claims are hereby **DISMISSED**:

1. the Plaintiffs' official capacity claims against all Defendants except Transylvania County and the City of Brevard;

2. the Plaintiffs' claims based upon any of the Defendants' conduct prior to May 14, 2011;

3. the Plaintiffs' claims based upon Defendant Barton and Thompson's conduct after May 14, 2011;

4. the Plaintiffs' claims against Sheriff Mahoney and Transylvania County for failure to train based upon the conduct of police officers; and

5. the Plaintiffs' claims against Sheriff Mahoney and Transylvania County based upon the actions of John Doe first responders and firefighters. In all other respects, the Defendants' Motion to Dismiss [Doc. 16] is **DENIED**.

**IT IS FURTHER ORDERED** that the Plaintiffs shall show good cause within fourteen (14) days of service of this Order for their failure to effect service on John Doe Defendants #1-#4. Failure of the Plaintiffs to respond in writing within fourteen (14) days shall result in a dismissal of these Defendants.

**IT IS SO ORDERED.**

Signed: September 22, 2015

Martin Reidinger
United States District Judge

31